UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x

Maria Infante,

      Plaintiff,             03 CV 8880 (KMW)

      -v-                 ORDER

Ambac Financial Group,

      Defendant.
-------------------------------------x

WOOD, U.S.D.J.:

## I. Overview

    Maria Infante was employed by Ambac Financial Group ("Ambac"). After taking a leave of absence for first a pregnancy and then for an allegedly pregnancy-related medical condition, Infante was not restored to her pre-leave position. She filed suit alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the New York State Human Rights Law, the New York Executive Law §§ 296, et seq. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-102, et. seq. Infante argues that Ambac discriminated against her on the basis of gender and pregnancy. Ambac moves for Summary Judgment arguing first that Infante fails to make a prima facie case and, in the alternative, that even if she makes a prima facie case of discrimination that she fails to provide any evidence to rebut Ambac's asserted non-discriminatory reasons for acting as it did.

Because the Court agrees that Infante has failed to make a <u>prima</u> <u>facie</u> case of discrimination, the motion for summary judgment is granted and the case is hereby dismissed.[1]

## II. The Legal Standard

To prevail on a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact to be tried, and that it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. Pro. 56(c); <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 322 (1986); <u>Citizens' Bank v. Hunt</u>, 927 F.2d 707, 710 (2d Cir. 1991).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion"; that responsibility includes identifying the materials in the record that the moving party believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323.  Once a motion for summary

---

1 Claims brought under the NYSHRL and the NYCHRL share the same standard of proof as Title VII claims. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; N.Y.McKinney's Executive Law § 296.  This opinion addresses Infante's claims in the context of the federal law, but for the reasons stated the state claims fail and are also dismissed.  <u>See</u> <u>Quarantino v. Tiffany and Co.</u>, 71 F.3d 58, 63-64 (2d Cir. 1995); <u>see also</u> <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 40, 50 (2d Cir. 2000) (analyzing claims under same standard and dismissing all).

judgment is made and supported, the non-moving party must set forth specific facts to be tried. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>Mitchell v. Shane</u>, 350 F.3d 39, 47 (2d Cir. 2003).

## II. Background[2]

In 1988, Maria Infante was hired as an administrative assistant by Ambac, a financial services company. Approximately two years later, she assumed the position of staff accountant. In 1996, Infante took maternity leave, which she extended by one month. She was restored to the same position of staff accountant upon her return.

Four years later, Infante was promoted to the position of Assistant Vice President. Infante informed her supervisors in early 2002 that she was pregnant, and took maternity leave beginning June 12, 2002. Ambac's maternity leave policy entitled Infante to twelve-weeks paid leave, plus an additional two weeks because Infante delivered her child by cesarean section. At the end of this leave period, Infante, on the advice of her doctors,

---

2The following recitation is taken from the parties' 56.1 Statements, unless otherwise noted; where the parties accounts differ, the Court assumes for the purposes of this motion that Infante's version of facts is true.

extended her leave until October 7, 2002. Then, she further
extended it to the end of October, and then later to December 2,
2002. Infante, by November, was under her primary physician's
care for treatment of her hyperthyroidism--a condition she had
long had, that was aggravated by her pregnancy. October 14, 2004
Dec. of Alex Racco ¶¶ 2-6. The employers at Ambac were unaware
that Infante's condition was due to her pregnancy.

Until November, Ambac had held Infante's position for her.
However, sometime in November, Ambac managers and Human Resources
personnel began to seek a new permanent employee to fill
Infante's position (under Infante's former title of staff
accountant). Infante was scheduled to return December 2, 2002,
but pursuant to her doctor's advice, Infante did not return. On
December 4, 2002, an Ambac human resources employee informed
Infante that Ambac was seeking a new staff accountant.

By mid-December, Ambac offered the position of staff
accountant to an external, female (and not pregnant) candidate
who accepted. She was scheduled to begin December 30, 2002, but
sometime in December withdrew her acceptance. Ambac decided to
re-open the interviewing process.

On December 11, 2002, Infante informed Ambac that she would
be cleared to return to work on December 19, 2002, a date beyond
the job protection period provided by the Family Medical Leave

Act.  But pursuant to Ambac's short term disability policy,
employees on medical leave are reinstated to their former
positions upon return, assuming those positions have not been
filled.

Instead, Ambac offered to interview Infante for an
Operations Specialist position.  Infante rescheduled the
interview, she says, because she had a conflicting commitment to
attend a closing for the refinancing of her house.  Infante also
arrived late at the (rescheduled) interview, but she claims it
was by only a few minutes and that she had called ahead to say
she was stuck in traffic.

Ambac claims that the rescheduling, the tardiness, and
Infante's failure to give a straight answer as to why she was
interested in the job evinced a lack of enthusiasm and lead Ambac
to not offer her the Operations Specialist position.  Ambac
instead hired a male candidate with a bachelor's degree in
economics who, Ambac says, presented himself as a stronger
candidate in the interview process.  Infante lacks any formal
accounting training, but says that she spoke with enthusiasm
about the job and interviewed well.  Ambac maintains that the
male candidate was hired because of his superior interview and
because he had formal accounting training, but Infante counters

that his job experience was very limited, especially compared to
her long history at the company.

Infante then interviewed for the Staff Accountant position.
The Staff Accountant position was a job Infante had held
previously, and, by Infante's account, was essentially the
Assistant Vice President of Finance position she had held just
before commencing her maternity leave, but with some reduced
responsibilities.  Infante maintains that she served in those
positions with distinction; Ambac claims she was less than
stellar.  Reviews of her performance for 1997-1999 were strong.
She was described as "exceptional", hard-working and committed.
Additionally, Infante's supervisor noted that, although Infante
did "not have much formal training in insurance accounting," she
developed skills "through on-the-job training."  Plaintiff's 56.1
Statement at ¶76-77.

It is undisputed that in December 2001, a review of Infante
by her superiors described her overall performance as
"Exceeds/Meets Expectations"--the second highest rating possible
out of four rating levels.  However, the review described her
work as "Acceptable Performance/Developmental Opportunity"--the
second lowest level--in half of the specific categories.  In
their depositions, Infante's supervisors testified that reviews
of employees always noted areas for improvement.  Also, Infante

claims that the several enumerated complaints in her review--
including that she needed to develop her analytical skills,
communication skills, and time management skills--were the result
of problems with another department and general disruptions due
to the events of September 11th.  Finally, Infante notes that she
received "Exceeds/Meets Expectations" in all the areas of
responsibility of the Staff Accountant position (and that her
only low marks were in responsibilities unique to the vice
president position).

Infante interviewed for this staff accountant position.
During the interview, Infante was asked "How does this fit into
the mix of you now being a mother of two living in New Jersey, is
this really what you want to do? How does that fit into the mix?"
Plaintiff's 56.1 Statement ¶ 301.  She was also asked "with
[your] situation now, do [you] want to come back to Ambac, do
[you] really want to come back, is this what [you] want?"  Id. at
¶ 302. During the interview, she was also asked whether she would
be willing to work long hours, to which she replied that she had
always worked long hours.  Id. at ¶¶303-304.

Infante was not given the position. (One supervisor admitted
that he did not really intend to hire her back at any point.  Id.
at ¶¶ 29, 298-99.)  Instead, a male employee was hired.  He had a
degree in accounting, although his specific educational and work

experience was not in insurance accounting (the focus of the position).  Ambac maintains that he was more qualified for the position.

This lawsuit ensued.

**IV.  Analysis**

To determine whether summary judgment is appropriate in a Title VII case such as this, the Court applies the three-part burden shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).  <u>See</u> <u>Fisher v. Vassar College</u>, 114 F.3d 1332, 1335-36 (2d Cir.1997) (<u>en</u> <u>banc</u>).  The three-step framework is as follows: First, a plaintiff must first come forward with facts sufficient to establish a <u>prima</u> <u>facie</u> case of discrimination giving rise to an adverse employment action; then, if plaintiff meets this burden, the defendant must articulate, but not prove, a legitimate reason for its conduct; finally, plaintiff must them prove by a preponderance that the defendant's proffered explanation is pretextual and that the actual motivation for the contested employment action was discriminatory.  <u>See</u> <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 530 U.S. 133, 142 (2000).

Ambac argues that Infante fails to offer evidence sufficient to make a <u>prima</u> <u>facie</u> case.  To establish a <u>prima</u> <u>facie</u> case, Infante must show "that: (1) she is a member of a protected

8

class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000). The burden to establish a prima facie case of discrimination "is not onerous." <u>Quarantino</u>, 71 F.3d at 64. Direct evidence is not required. <u>Id</u>. Plaintiff simply must present enough "believable evidence for a jury to find that an adverse employment decision resulted because of discrimination." <u>Id.</u>

Ambac urges that Infante fails at two of the elements. First, Ambac believes that Infante cannot establish that she is a member of a protected class. Second, Ambac argues that the circumstances do not give rise to an inference of discrimination. The Court addresses each argument in turn.

## A.  Protected Class

Title VII protects individuals from discrimination on the basis of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Ambac argues that because Infante did not experience an adverse employment action while pregnant, she cannot pursue a claim for pregnancy discrimination. Ambac disputes that Infante's thyroid condition was "related" to her

pregnancy.[3]  However, because Infante has come forward with
evidence to the contrary, summary judgment on this ground is
inappropriate.  Ambac argues that because it was unaware that
Infante's protracted absence was due to pregnancy, there can be
no inference that any action it took was due to pregnancy or a
condition related to pregnancy.  Finally, Ambac claims that
because any adverse action against Infante occurred after her
being cleared to return to work, as a matter of law she was no
longer suffering from any medical condition, pregnancy-related or
otherwise.

Ambac's arguments on this point fail.  Infante was pregnant,
and her supervisors at Ambac knew it.  She continued to be a
member of a protected class even after her pregnancy ended.  The
adverse employment action based on Infante's pregnancy need not
have occurred during her pregnancy or even during a period in
which she suffered from a related medical condition in order to
satisfy the first element of a prima facie case.  Neither party
has pointed the Court to a Second Circuit decision definitively
resolving the parameters of what constitutes a protected class
for the purposes of a pregnancy-related Title VII suit.  The

_____

[3] Ambac also argues that because the condition was treated by Infante's
regular physician, as opposed to her obstetrician, the condition was thus not
"related to" her pregnancy.  The Court refuses to adopt such a view as a
matter of law—although perhaps what doctor treated a given condition could be
offered as evidence of whether or not such condition was "related" to
pregnancy.

Court therefore looks to other legal authority and finds
particularly persuasive the decision in Kocak v. Community Health
Partners of Ohio, Inc., 400 F.3d 466 (6th Cir. 2005).

The Kocak court was faced with the question of whether a
woman, Kocak, who had been pregnant in the past could bring a
Title VII suit for an adverse employment action taken after her
pregnancy.  The court reasoned as follows:

> Kocak was not pregnant at the time of her 2001
> application; she did not bear any children during the period
> of her application (in fact, she had not done so for
> approximately two years); and no medical conditions related
> to pregnancy manifested themselves during the time of her
> application. The district court concluded from these facts
> that Kocak was not protected by the PDA at the time that
> Community Health did not hire her.
> This was error. The Supreme Court has held that the PDA
> prohibits an employer from discriminating against a woman
> "because of her capacity to become pregnant." Int'l Union,
> United Auto., Aerospace and Agric. Implement Workers of Am.
> v. Johnson Controls, Inc., 499 U.S. 187, 206 (1991); see
> also Walsh v. Nat'l Computer Sys., 332 F.3d 1150, 1160 (8th
> Cir. 2003) ("Plaintiff asserts that she was discriminated
> against . . . because she is a woman who had been pregnant,
> had taken a maternity leave, and might become pregnant
> again. 'Potential pregnancy . . . is a medical condition
> that is sex-related because only women can become
> pregnant.'") (quoting Krauel v. Iowa Methodist Med. Ctr., 95
> F.3d 674, 680 (8th Cir. 1996)).

Id. at 469-70.

The Court is convinced that Kocak represents the soundest
interpretation of the statute, which prohibits discrimination
"because of or on the basis of pregnancy, childbirth, or related
medical conditions" and decrees that "women affected by

pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. §2000-e(k). Certainly such prohibited treatment "on the basis" of, or "because of," pregnancy could occur after the actual pregnancy. There is simply no requirement that discrimination because of pregnancy or related medical conditions occur while the woman is still experiencing those states of being. Infante successfully argues that she is a member of a protected class, and summary judgment on this ground is not appropriate.

In any event, Infante also makes claims that she was discriminated against on the basis of gender. Ambac correctly notes that Infante's general assertions that she was discriminated against on the basis of "motherhood" have no basis in law. However, allegations that Infante was discriminated against on the basis of presumed conformity to a gender stereotype that she would stay home with her children can be evidence in support of a so-called "sex plus" claim on the basis of gender discrimination under Title VII. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 119-22 (2d Cir. 2004). Infante clearly meets the requirements to satisfy the first prong of her prima facie case.

**B.  Circumstances suggesting discrimination**

One could argue that this approach of generously construing the parameters of the protected class could allow too many frivolous lawsuits, but the required fourth element of a <u>prima facie</u> case still filters out meritless suits:

> [A] plaintiff must do more than show that she belonged to a protected group and that she suffered adversity at the workplace. Satisfaction of both the first and third elements of the prima facie case, without more, does not satisfy the fourth element. Rather, a plaintiff must provide facts that would allow a reasonable factfinder to conclude that her misfortunes occurred because of her membership in a protected class.

<u>Coraggio v. Time Magazine, Inc. Magazine Co.</u>, 1996 WL 139786, at *5 (S.D.N.Y. Mar. 28, 1996). The facts adduced by Infante are simply not enough to give rise to an inference of discrimination based on pregnancy or pregnancy related medical condition. In any event, Ambac has proffered several non-discriminatory reasons for its actions and Infante does not offer sufficient evidence to permit a jury to find by a preponderance that she was discriminated against. <u>Reeves</u>, 530 U.S. at 142.

Infante relies perhaps most heavily on the timing of Ambac's various hiring decisions to support her claim of discrimination on the basis of pregnancy or related condition. However, Infante's arguments in this regard are really just supposition upon supposition. She was permitted the full extent of her maternity leave. Ambac decided to replace her while she was on

leave due to her thyroid condition, and it is undisputed that no one knew that leave was due to pregnancy.  The simple fact that Ambac decided to replace Infante after she repeatedly extended her leave (well past her original maternity leave, and into a leave period covered by the short term disability provisions of the Family Medical Leave Act) does not give rise to an inference that Ambac's decision was on the basis of Infante's pregnancy. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82 (2d Cir. 2005) (In age-discrimination context, defendant must have knowledge of plaintiff's age relative to other applicants in order to give rise to inference of discrimination on that ground).  Infante can still successfully claim to be a member of a protected class months after the end of her pregnancy.  However, the distance of time between her pregnancy and the adverse action against her diminishes the likelihood that timing alone warrants a finding of discrimination.  See Kocak, 400 F.3d at 470-71.

Infante argues that Ambac's decision to begin interviewing for her replacement was illogical (and thus suggests discrimination) because Infante was supposed to return by December 2, and that date was sooner than the date by which Ambac would be able to hire someone new.  This interpretation of events is strained—Infante had extended her leave multiple times; her employers at Ambac could have quite logically decided that she

14

was unlikely to return at her next purported return date, and therefore that hiring a replacement who could start soon after that was a prudent course of action.  These circumstances fail to give rise to the inference that Ambac began interviewing replacements for her due to her pregnancy.  Rather, it is uncontroverted that Ambac began to interview potential replacements for Infante because Infante was absent well-past her maternity leave, and it was in no way contrary to law or company policy for Ambac to find a replacement for an employee on general medical leave.

However, Ambac's intended replacement for Infante fell through before Infante was in fact cleared to work.  Infante therefore argues that because Ambac's practice was to return employees returning from medical leave to their prior positions if those positions were still available, the Court should infer discrimination from Ambac's failure to follow this practice.4 This  argument is Infante's strongest.

Infante cites to <u>Quarantino v. Tiffany & Co.</u>, 71 F.3d 58 (1995), for the proposition that "evidence concerning [defendant's] discriminatory animus" can include "the refusal to give [plaintiff] back her former position when she was ready to return [from leave], and on two subsequent occasions, when the

---

4Infante refers to this practice as "company policy" but she has presented no evidence that Ambac had any such formal policy, or that any other employee in similar circumstances was treated differently than she.

position was vacant." Id. at 65.  Certainly failure to follow
policy can be some evidence of discriminatory animus.  See Stern
v. Trustees of Columbia Univ., 131 F.3d 305, 313 (2d Cir. 1998).
However, the plaintiff in Quarantino adduced far greater evidence
of discriminatory animus, including evidence of numerous
instances of hostile comments and treatment from her supervisors,
and evidence that the defendant had started interviewing for the
plaintiff's permanent replacement before she even left for
maternity leave (the fact upon which the Circuit placed the most
emphasis).

     Infante essentially wants the Court to infer from her
protected status and an adverse employment action, with nothing
else, that she suffered a Title VII violation.  This is not
enough--she must adduce evidence that raises a question of fact
as to whether the employment action was based on impermissible
discrimination.  The Court cannot infer discrimination based on
the first and third elements of a prima facie case alone.
Corraggio, 1996 WL 139786 at *5; see also Shumway v. UPS, Inc.,
118 F.3d 60, 63 (2d Cir. 1997).

     Infante also offers several statements by her superiors from
which she asks the Court to infer discrimination.
"[S]tereotypical remarks about the incompatibility of motherhood
and employment can certainly be evidence that gender played a

16

part in an employment decision." See Back, 365 F.3d at 122.

However, "[t]o say that the stereotyping here alleged can

constitute sex-discrimination is not enough," the Court "must

also determine whether the plaintiff has adduced enough evidence

to defeat summary judgment as regards her discrimination claim."

Id. The statements offered by Infante are innocuous and do not

suggest that anyone at Ambac was discriminating against her

either on the basis of her recent pregnancy or on the basis of

any assumptions about how women with children structure their

lives. See Weinstock, 224 F.3d at 45.

Infante claims that at her interview, she was asked "How

does this fit into the mix of you now being a mother of two and

living in New Jersey, is this really what you want to do? How

does that fit into the mix?" and "with [your] situation now, do

[you] still want to come back to Ambac, do [you] really want to

come back, is this really what [you] want?" Plaintiff's Brief in

Opposition to Motion for Summary Judgment at 14. These

statements do not rise to the level of comments that Courts have

viewed as suggestive of discrimination. For example, in Back v.

Hastings on Hudson Union Free School Dist., 365 F.3d 107 (2d Cir.

2004), the Circuit reversed a district court conclusion that

statements by the plaintiff's employer were innocuous. Id. at

117. In Back, the plaintiff's supervisors told her "that this

17

was perhaps not the job or the school district for her if she had 'little ones,' and that it was 'not possible for [her] to be a good mother and have this job.'" Id. at 115. "The two also allegedly remarked that it would be harder to fire plaintiff if she had tenure, and wondered 'whether [her] apparent commitment to [her] job was an act. They stated that once [she] obtained tenure, [she] would not show the same level of commitment [she] had shown because [she] had little ones at home." Id.

The statements here show no assumptions that plaintiff would follow gender stereotypes and abandon her work responsibilities for her children. The questions asked of Infante were perfectly reasonable inquiries into her plans and current professional goals, particularly given her repeated extensions of leave, and on their own show no presumption by Ambac employees about how Infante or women or mothers in general will or should behave. An employer asking an employee who has taken repeated extensions of leave whether she really wants to come back cannot by itself give rise to an inference of discrimination.


**V.  Conclusion**

If the facts adduced by Infante were sufficient to present a prima facie discrimination case, then any adverse employment action against a woman who had been recently pregnant would

18

suffice to present a prima facie case of discrimination. The mission of Title VII is, in part, to assure that pregnant women are not treated any differently than other employees. However, were the Court to conclude that a prima facie case lay here, the Court would be essentially holding that pregnant women are entitled to far greater job protection than any other employees. This result is beyond the scope of the statute.

For the foregoing reasons, the Court concludes that summary judgment is appropriate. Defendant's motion is therefore granted and the case is thus dismissed.


SO ORDERED.

Dated:    New York, New York
          January 5, 2006


                              Kimba M. Wood
                              United States District Judge


19